PAUL HAM, Bar No. 227395
HAM LAW FIRM
50 California Street, Suite 1500
San Francisco, CA 94111
Telephone:     (415) 713-5690
Facsimile:     (866) 374-9773
E-Mail:          paul.ham@hamfirm.com

Attorney for Defendant David Salma

IN THE UNITED STATES BANKRUPTCY COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| In Re: | Chapter 7 |
| DAVID SALMA, | Adversary Proceeding No. 09-03126 |
| Debtor, | Case No. 09-30863 |
| | MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF DEFENDANT DAVID SALMA'S MOTION FOR SUMMARY JUDGMENT |
| LEW JENKINS and LINDA M. JENKINS, as Trustees of the Jenkins Trust U/A/D 1/15/98 and JACK H. FRESKOS, beneficiary of IRA 042640 at Westamerica, | |
| Plaintiffs, v. | |
| DAVID SALMA, | |
| Defendant. | |

I. **<u>INTRODUCTION</u>**

Plaintiffs' 11 U.S.C. Section 523 claims should be denied because (1) they admit in a separate action that other defendants, and not Defendant Salma, were the parties that committed the fraud and/or negligence that caused them harm; and (2) they fail to establish any of the elements required for relief under Section 523(a)(2)(A), (a)(2)(B), and (a)(6).

## II. STATEMENT OF FACTS

1. On July 7, 2006, Debtor entered into a Promissory Note with Plaintiffs, borrowing $1,670,500 ("Loan") that was secured by real property located at 1900 Eddy Street, San Francisco, CA 94115 ("Subject Property). See Salma Decl., ¶ 4; see Dkt, No. 21 (Exhibit A, attached to Amended Complaint). The Loan was in a junior position to a mortgage from East West Bank that was also secured by the Subject Property. See Salma Decl., ¶ 4. Sequoia Mortgage Capital brokered the Loan and acted as the intermediary between Debtor and Plaintiffs. Id. Jason Freskos[1] is a co-owner of Sequoia Mortgage Capital. See Jason Freskos Depo, pp. 8, attached as Exhibit C to Ham Decl.

2. Plaintiffs Lew and Linda Jenkins were the source of the majority of the Loan, $1,525,000, and Jack Freskos was the source of the remainder, $150,000. See Jenkins/Jack Freskos (father of Jason Freskos) Depo (p. 48), attached as Exhibit B to Ham Decl. Lew Jenkins has been involved in making loans to real estate professionals for five to ten years. See Jenkins/Jack Freskos Depo (p. 41-42). Jack Freskos has been involved in the real estate industry for twenty-five as a licensed real estate agent. See Jenkins/Jack Freskos Depo (p. 48-49). Lew Jenkins is a businessman who has experience in making private real estate loans. See Jenkins/Jack Freskos Depo (p. 45-46).

3. Lew Jenkins had made previous loans to Defendant, with Sequoia Mortgage acting as broker, which were either fully paid or refinanced into the Loan. See Jenkins/Jack Freskos Depo (p. 46-47).

4. Although the amount of the Loan was $1,670,500, Defendant only received $628,588.71 resulting from the repayment of loans owed previously to Plaintiffs and the payment of various fees, including a $100,000 origination fee charged by Sequoia Mortgage Capital. See Attachment 2 to Jason Freskos Depo; Salma Decl., ¶ 4. The term of the Loan was for 12 months at a 15% interest rate. See Jason Freskos Depo (p. 26); Attachment 1 (Jenkins 87), attached to Jason Freskos Depo; Salma Decl., ¶

---

[1] Jason Freskos, co-owner of Sequoia Mortgage Capital, is the son of Jack Freskos, one of the Plaintiffs in this proceeding.

4. The Loan was a "hard money" loan with higher rates of interest and fees than conventional bank loan. See Salma Decl., ¶ 4.

5. Defendant was a real estate professional who has been involved with real estate sales and investing for over 20 years. See Salma Decl., ¶ 2. Defendant purchased the Subject Property approximately during the early 1990s. See Salma Decl., ¶ 3. During the early 2000s, the real estate industry experienced dramatic growth and Defendant, similar to other real estate professionals, leveraged equity in current holdings to finance further purchases. See Salma Decl., ¶ 3.

6. But the real estate market began to sharply decline in 2007 and 2008. See Salma Decl., ¶ 6. Defendant fully intended to repay the Loan and hoped that the real estate market would improve. See Salma Decl., ¶ 4. But economic conditions worsened, and Defendant was unable to make the higher mortgage payments on the Subject Property. See Salma Decl., ¶ 6. The Subject Property was foreclosed by East West National Bank, the holder of the senior debt, during 2008. See Salma Decl., ¶ 6. Defendant attempted to obtain conventional financing through banks near the time of the Loan but was unsuccessful. See Salma Decl., ¶ 5.

7. Defendant had no communications with Plaintiffs regarding either the Loan or the Subject Property. See Jenkins/Freskos Depo. (pp. 12 -14; 36-38; 57-66); Salma Decl., ¶ 7. Defendant did not provide any documents to Plaintiffs related to the Loan or the Subject Property. Id. Defendant did not make any representations to Plaintiffs regarding his financial health. Id.

8. Defendant interacted with Jason Freskos of Sequoia Mortgage Capital regarding the Loan. See Jason Freskos Depo (p. 9-10). Prior to this Loan, Defendant was involved with eight to fifteen prior loans with Sequoia Mortgage, obligations that Defendant completely satisfied. See Jason Freskos Depo., (pp. 12-13). Jason Freskos prepared the Loan Disclosure Statement and that sent it to Plaintiffs. See Jason Freskos Depo., (pp. 17) and referenced Attachment 1. In the Loan Disclosure Statement, it states that Defendant had no income. See Attachment 1 (pp. Jenkins 91), attached to Jason

Freskos Depo. Jason Freskos also provided an appraisal report ("Appraisal Report") prepared by Property Science, dated March 7, 2006, regarding the Subject Property to Plaintiffs. See Jason Freskos Depo (pp. 20) and referenced Attachment 1 attached to Paul Chandler deposition (Attachment 1 is Appraisal Report; the deposition of Paul Chandler is attached as Exhibit D to Ham Decl).

9. Jason Freskos does not recall any other documents that he provided to Plaintiffs related to the value of the Subject property, other than the Appraisal Report. See Jason Freskos Depo (pp. 30). Jason Freskos recalls doing due diligence regarding the Subject Property and believes that the $7,670,000 value determined by Property Science accurately reflected the Subject Property's worth at the time the Loan was made. See Jason Freskos Depo (pp. 30-31). Jason Freskos does not recall any statements that Defendant made to him regarding Defendant's finances (other than related to the Subject Property) or provided any documents related to the Subject Property other than what is reflected on the Appraisal Report. See Jason Freskos Depo. (p 33).

10. Plaintiffs' contentions against Defendant relate to generalized issues involving rental income generated by the Subject Property and a belief that the valuation of the Subject Property was exaggerated. See Jenkins/Jack Freskos Depo. (pp. 80-86). Plaintiffs' claims against Defendant are based upon assumptions that Defendant made misrepresentations to Sequoia Mortgage Capital and generalized alleged wrongdoing without any specific allegations or any personal knowledge of what Defendant may or may have not said to anyone about the rents, include alleged statements to Sequoia Mortgage Capital. See Jenkins/Jack Freskos Depo. (pp. 62-66).

11. Plaintiffs relied upon the Appraisal Report and their general experience in the real estate industry in deciding to extend to Loan to Defendant. See Jenkins/Freskos Depo (p. 45-46).

12. The Appraisal Report was prepared by Popular Science for Far East National Bank and Defendant neither ordered the report nor had any control over Property Science's valuation methodologies or value determination. See Salma Decl., ¶ 5. Property Science's valuation of the

Subject Property was objective and derived from due diligence. See Chandler Depo (pp. 53-65). Property Science did not solely rely upon the representations made by Defendant but engaged in due diligence and used comparable market rents in applying the income approach to valuation. Id. In addition, Property Science also considered comparable market sales values in applying the sales comparison approach. Id. When appropriate, Property Science made adjustments to the market comparables in their income and comparable sales methodologies. Id. Both methods were used in deriving a valuation. Id. For the income approach, the rents listed on Rent Roll attached to the Appraisal Report were within the range of market rates found by Property Science. Id.; Attachment 1 (Appraisal Report, pp. 46-54), attached to Chandler Depo. The valuation determined by Property Science was based upon due diligence and represents a non-biased, objective determination of the value of the Subject Property as of March, 7, 2006. See Chandler Depo (pp. 66).

13. Defendant does not recall whether he was the source of the attached Rent Roll (attached to the Appraisal Report) or if another entity, such as Far East National Bank, compiled the Rent Roll. See David Salma Decl., ¶ 8. It may have been something that was generated through a phone call Defendant had with a Far East National Bank employee, but this is a guess at best Id. The Appraisal Report was generated in 2006 and Defendant managed numerous properties during that time. Id.

### III. ARGUMENT

#### A. Summary Judgment Standard

Summary judgment is appropriate when the movant demonstrates that "there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c); Owen v. Local No. 169, 971 F.2d 347, 355 (9th Cir. 1992). The party moving for summary judgment "bears the initial responsibility of informing the district court of the basis for its motion, and identifying those portions of the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any," which it believes demonstrate an absence of a genuine issue of

material fact. Celotex v. Catrett, 477 U.S. 317, 323 (1986). If the moving party meets its initial responsibility, then the burden shifts to the opposing party to establish that a genuine issue as to any material fact actually does exist. Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 586 (1986).

### B. Plaintiffs Admit That They Believe The Alleged Harm Was Caused By Other Parties, And Not By Defendant.

Plaintiffs' recent lawsuit against Sequoia Mortgage Capital and Property Science ("Appraisal Complaint"), filed after the initiation of this adversary proceeding, evidences their belief that their claims against Defendant lack merit. See Exhibit A (copy of complaint), attached to Ham Decl. In Plaintiffs' Appraisal Complaint, they allege that Sequoia Mortgage Capital and Property Science ("Appraisal Defendants") did not turn over all appraisals known to them and that they acted negligently or fraudulently in determining the value of the Subject Property. Plaintiffs further allege that Appraisal Defendants, and not Defendant David Salma, caused them injury and harm. Id. These statements are judicial admissions in this Court. See, e.g., Hakopian v. Mukasey, 551 F.3d 843, 846 (9th Cir. 2008) ("[a]llegations in a complaint are considered judicial admissions"); Fed. R. Evid. Rule 801(d)(2) (admissions made by party opponent or representative is not hearsay); Williams v. L.A. County Superior Court, 2008 U.S. Dist. LEXIS 112208 (C.D. Cal. Dec. 3, 2008) (allegations in complaints contained in other suits by plaintiff are still admissions).

Plaintiffs' admissions, as contained in their Appraisal Complaint, establish a *prima facie* case that their Section 523 claims against Defendant lack any merit. For Section 523 to apply, causation is a necessary element. See Section 523(a)(2)(A) & (B). In the Appraisal Complaint, Plaintiffs admit that they believe that one or both of the Appraisal Defendants committed either fraud and/or negligence against them and that these acts caused Plaintiffs' harm. See Exhibit A (Appraisal Complaint), attached to Ham Decl. Plaintiffs' own admissions calls into question any alleged acts committed by Defendant and, more importantly, cuts off any causal link between those alleged acts and the alleged harm suffered

by Plaintiffs. This is because Plaintiffs admit that any alleged harm was committed by the Appraisal Defendants and not by Defendant David Salma. On this basis alone, Plaintiffs' claims under Section 523 should be summarily denied.

### C. To The Extent Applicable, No Relief Under Section 523(a)(2)(A), 523(a)(2)(A), (a)(2)(B), Or (a)(6) Is Permitted.

To the extent Plaintiffs' Section 523 claims should be considered given their admissions, Plaintiff must still establish, by a preponderance of the evidence, that <u>each and every element</u> of Sections 523(a)(2)(A), 523(a)(2)(A), (a)(2)(B), or (a)(6) apply before any relief is permitted. See, e.g., <u>Ghomeshi v. Sabban (In re Sabban)</u>, 600 F.3d 1219, 1222 (9th Cir. 2010); <u>Carr v. Cohen (In re Cohen)</u>, 2010 Bankr. LEXIS 445 (Bankr. W.D. Wash. 2010) (<u>relying</u> <u>upon</u> <u>Grogan v. Garner</u>, 498 U.S. 279, 291(1991); <u>Candland v. Insurance Co. of N. Am. (In re Candland)</u>, 90 F.3d 1466, 1469 (9th Cir. 1996). The Ninth Circuit, recognizing the importance of "fresh starts," places a high hurdle in denying a discharge based upon Section 523 grounds. <u>In re Klapp</u>, 706 F.2d 998, 999 (9th Cir. 1983) ("dischargeability of debts contained in section 523 should be construed strictly against creditors and in favor of debtors").

#### 1. Plaintiff Fails To Satisfy The Elements For Relief Under Section 523(a)(2)(A).

Section 523(a)(2)(A) requires the creditor to show that:

(1) the debtor made . . . representations;

(2) that at the time he knew they were false;

(3) that he made them with the intention and purpose of deceiving the creditor;

(4) that the creditor relied on such representations; [and]

(5) that the creditor sustained the alleged loss and damage as the proximate result of the misrepresentations having been made.

Ghomeshi, 600 F.3d at 1222 (relying upon Am. Express Travel Related Servs. Co. v. Hashemi (In re Hashemi), 104 F.3d 1122, 1125 (9th Cir.1996) and Britton v. Price (In re Britton), 950 F.2d 602, 604 (9th Cir. 1991)).

                i.    Debtor made no representations to Plaintiffs.

Debtor had no communications with Plaintiffs regarding the Loan and did not directly provide any documents related to the Loan to Plaintiffs.

> Q:    Mr. Jenkins, have you ever had any conversations with David Salma?
>
> A:    No.
>
> Q:    Mr. Freskos, have you ever had any conversations with David Salma regarding the note I mentioned previously?
>
> A:    No.
>
> Q:    So, Mr. Jenkins, has David Salma ever given you any documentation related to this loan?
>
> A:    No.
>
> * * *
>
> Q:    [To Mr. Freskos] Did David Salma ever give you any sort of written statement, any documentation of any kind that [is] related to this loan?
>
> A:    Are you asking me did he [David Salma] directly do that?
>
> Q:    Yes. That's my question. Did David Salma give you any written documentation?
>
> A:    Not that I recall.

See Jenkins/Jack Freskos Deposition, attached as Exhibit B to Ham Declaration, p. 12-13. Plaintiffs further admit that Defendant made no representations to them regarding the value of the Subject Property or rents generated by the Subject Property. See Jenkins/Jack Freskos Depo. (pp. 12 -14; 36-38; 57-66). Defendant also neither provided Plaintiffs with any documents nor made any representations regarding his financial health. Id. In fact, the only representations Plaintiffs received regarding

Defendant's financial health was that he made no income. <u>See</u> Exhibit 1 (loan disclosure package, p. Jenkins 91), attached to Jenkins/Jack Freskos Depo.

Plaintiffs' claims are nothing more than assumptions of wrongdoing that allegedly occurred. <u>See</u> Jenkins/Jack Freskos Depo. (pp. 62-66). Plaintiffs' make so specific claims, other than a belief that the valuation of the Subject Property is exaggerated and that issues exist with the rents. <u>Id.</u> But Plaintiffs have no personal knowledge of any statements made by Defendant to anyone, including to Sequoia Mortgage, regarding the rents. <u>Id.</u>

        ii.    <u>Defendant Did Not Make Any Untrue Statements.</u>

Defendant interacted with Jason Freskos of Sequoia Mortgage Capital regarding the Loan. <u>See</u> Jason Freskos Depo., (p. 10), attached as Exhibit C to Ham Decl. Prior to this Loan, Defendant was involved with eight to fifteen prior loans with Sequoia Mortgage, obligations that Defendant completely satisfied. <u>See</u> Jason Freskos Depo., (pp. 12-13). Jason Freskos prepared the Loan Disclosure statement and sent the statement to Plaintiffs. <u>See</u> Jason Freskos Depo., (pp. 17). Jason Freskos also provided an appraisal report ("Appraisal Report") prepared by Property Science, dated March 7, 2006, of the Subject Property to Plaintiffs. <u>See</u> Jason Freskos Depo (pp. 20) and referenced Attachment 1 attached to Paul Chandler deposition (Attachment 1 is Appraisal Report); the deposition of Paul Chandler is attached as Exhibit D to Ham Decl. Jason Freskos does not recall any other documents that he provided to Plaintiffs related to the value of the subject property. <u>See</u> Jason Freskos Depo (pp. 30). Jason Freskos recalls doing due diligence regarding the subject property and believes that the $7,670,000 value determined by Property Science accurately reflected the Subject Property's worth at the time the Loan was made. <u>See</u> Jason Freskos Depo (pp. 30-31). Jason Freskos does not recall any statements that Defendant made to him regarding Defendant's finances (other than related to the Subject Property) or provided any documents related to the Subject Property other than what is reflected on the Appraisal Report. <u>See</u> Jason Freskos Depo. (p 33).

Defendant does not recall whether he was the source of the attached Rent Roll (attached to the Appraisal Report) or if another entity, such as Far East National Bank, compiled the Rent Roll. See David Salma Decl., ¶ 8. The Rent Roll may have been generated through a telephone conversation that Defendant had with a Far East National Bank but it is a guess at best. Id. The Appraisal Report was generated in 2006 and Defendant managed numerous properties during that time. Id.

Regardless of the source, Property Science still scrutinized the accuracy of the Rent Rolls by comparing them with actual comparable market rents. See Chandler Depo (pp. 53-66); Attachment 1 (Appraisal Report, pp. 46-54), attached to Chandler Depo. Moreover, Property Science also used actual sales of comparable real estate, in addition to the income method (based upon rents), in determining the market value of the Subject Property. Id. Further, even if the Rent Roll may be imputed to Defendant, Property Science's due diligence showed that they were generally within the range of comparable market rents. Id. The valuation determined by Property Science was based upon due diligence and represents a non-biased, objective determination of the value of the Subject Property as of March, 7, 2006. Id.

### iii. Debtor Had No Intention Of Defrauding Debtor.

Prior to the dramatic decline in real estate values during 2007 and 2008, Defendant was a real estate professional that invested and owned several real estate properties. See Salma Decl., ¶ 2, 6. Defendant has over 20 years of real estate experience. Id. Debtor obtained loans both through Sequoia Mortgage, as a mortgage broker, and from Plaintiffs prior to this Loan. See Jason Freskos Depo., (pp. 12-13). In all of those occasions, Debtor fully satisfied his obligations under the relevant loans. Id. Similar to other real estate professionals at that time, Debtor struggled with rising and due mortgage payments as real estate values declined. See Salma Decl., ¶ 6. From this Loan, Debtor only netted loan proceeds of $628,588.71 out of the total $1,670,500 amount borrowed. See Attachment 2, attached to Jason Freskos Depo; Salma Decl., ¶ 4. The rest was used to repay previous loans taken from Plaintiffs

and for fees (including origination), totaling over $100,000. Id. Debtor was unable to obtain a loan from other conventional sources such as banks. See Salma Decl., ¶ 5. However, Debtor had every intention of repaying the debt as he had done on numerous occasions. See Salma Decl., ¶ 4; See Jason Freskos Depo., (pp. 12-13).

    iv. <u>Defendant Made No Representations To Creditor; Therefore, No Reliance Can Occur.</u>

As mentioned, Defendant made no representations to Plaintiffs related to the Loan or the Subject property. Therefore, Plaintiffs cannot rely upon any representations because none were made by Defendant. To the extent the statements in the Appraisal Report may be imputed to Defendant, he did not order and did not have any control regarding Property Science's valuation determination. See Salma Decl., ¶ 5. Moreover, there is nothing material in the Appraisal Report that even suggests any impropriety committed by Defendant. Property Science, an independent appraisal company, prepared the Appraisal Report (dated March 27, 2006) for Far East National Bank. See Chandler Depo (pp 49-50). The appraisers relied upon independent sources of information, such as market comparable sales and market rents, in determining the value of the Subject Property. See Chandler Depo (pp. 53-66). The rental information contained in the Appraisal Report was within the range of comparable rents as determined through the due diligence of Property Science. See Chandler Depo (pp 54 -57). Property Science also analyzed the rates for parking and laundry and determined them to be comparable to market rates. See Chandler Depo (pp 56 -57). Moreover, Property Science would have made adjustments to the valuations if they believed that the rental rates or the comparable sales did not accurately reflect the value of the Subject Property. See Chandler Depo (pp. 53-66).

    v. <u>No Proximate Cause Exists Between Defendant's Alleged Acts And Plaintiffs' Alleged Harm.</u>

Plaintiffs' claims for relief fails on several levels become there is no proximate cause between any alleged acts committed by Defendant and Plaintiffs' alleged harm. First, Defendant did not make

any statements to Plaintiffs regarding the Loan, Subject Property, or his financial health. Second, the Appraisal Report (the document upon which Plaintiffs' allegations are based) was prepared by Property Science and not by Defendant. Defendant simply had no control over the valuations because Property Science independently determined the Subject Property's value. Third, to the extent any statements and documents (such as the Rent Roll) may be legitimately imputed to Defendant, Property Science still conducted due diligence, using actual market comparisons, to substantiate any statements and/or documents related to the Subject Property and made adjustments when appropriate. See Chandler Depo (pp. 53-66); Attachment 1 (Appraisal Report, pp. 46-54), attached to Chandler Depo. Finally, Plaintiffs fail to support any allegations related to the accuracy of the Rent Rolls (to the extent that they may be imputed to Defendant) to any degree of specificity, and admits that their claims are based upon assumptions without any personal knowledge regarding statements made by Defendant to anyone involving the rents. See Jenkins/Jack Freskos Depo. (pp. 62-66). Property Science further determined that the rates reflected in the Rental Roll were within market rates. Therefore, Plaintiffs' claims fail for a lack of proximate cause on multiple levels, any one of which is sufficient to deny them any relief.

### 2. Plaintiff Fails To Satisfy The Elements For Relief Under Section 523(a)(2)(B).

The requirements for relief under Section 523(a)(2)(B) are essentially the same[2] for Section 523(a)(2)(A). See U.S.C. Section 523(a)(2)(A) & (B); In re Siriani, 967 F.2d 302, 304 (9th Cir. 1992) However, one material difference is that Section 523(a)(2)(A) applies to non-written representations and Section 523(a)(2)(B) applies to written statements of financial condition. McCrary v. Barrack (In re

---

[2] The Ninth Circuit does recognize the following seven elements for relief under Section 523(a)(2)(B):

> [A written] representation of fact by the debtor, (2) that was material, (3) that the debtor knew at the time to be false, (4) that the debtor made with the intention of deceiving the creditor, (5) upon which the creditor relied, (6) that the creditors reliance was reasonable, [and] (7) that damage proximately resulted from the representation.

Candland v. Insurance Co. of N. America (In re Candland), 90 F.3d 1466, 1469 (9th Cir. 1996). However, they are substantively essentially the same as for Section 523(a)(2)(A).

Barrack), 217 B.R. 598, 604 (B.A.P. 9th Cir. Cal. 1998); In re Siriani, 967 F.2d at 304. Here, no written statements of financial condition or written statements of any kind provided by Defendant to Plaintiffs. The only document related received by Plaintiffs regarding Debtor's financial condition was provided by Sequoia Mortgage Capital in the form of the Lender Disclosure Package. In that form, which was prepared by Jason Freskos and not the Debtor, lists Debtor's income as being $0. Therefore, Plaintiffs could not argue that they believed that Debtor's financial condition was better than what was disclosed to them. Further, to the extent statements made in the Appraisal Report may be imputed to Debtor (notwithstanding the fact that it was prepared by Property Science), there is nothing material in the Appraisal Report that Plaintiffs can genuinely argue as being a misrepresentation regarding Defendant's financial condition, that was reasonably relied by them, and which proximately caused them harm as required by Section 523(a)(2)(B).

### 3. No Relief Is Available Under Section 523(a)(6)

A debtor must injure a creditor willfully and maliciously before any relief under Section 523(a)(6) may be afforded. 11 U.S.C. § 523(a)(6). Actual tortious conduct, beyond mere breach of contract, is a required element. Lockerby v. Sierra, 535 F.3d 1038, 1040 (9th Cir. Ariz. 2008). Therefore, even an actual intent to breach the contract is insufficient to meet the tortious conduct requirement. Lockerby v. Sierra, 535 F.3d 1038, 1042 (9th Cir. Ariz. 2008) (recognizing intent to breach a contract is insufficient for Section 523(a)(6) since such an interpretation would run counter to the "fresh start" purpose of bankruptcy and even contradict other portions of the Bankruptcy Code).

Here, Defendant had every intention of repaying the Loan. Plaintiffs make no allegation that Defendant intended not to repay the Loan, let alone intended to cause them tortious injury. Consequently, Plaintiffs are not entitled to any relief under Section 523(a)(6).

In summary, Plaintiffs' Section 523 claims should be denied summarily. As a preliminary matter, Plaintiffs admit in their Appraisal Complaint that they believe that the Appraisal Defendants, not

Memorandum (Adv. Proc. No. 09-03126) -13-
Case: 09-03126    Doc# 30    Filed: 06/04/10    Entered: 06/04/10 11:34:11    Page 13 of 15

Defendant, committed fraud and/or negligence and that these acts caused them harm as related to the Loan. Therefore, there can be no causal link between the alleged acts committed by Defendant and Plaintiffs' alleged harm. Plaintiffs' admission alone justifies the grant of summary judgment.

Moreover, even to the extent the Plaintiffs' Section 523 claims are considered, their claims fail on multiple levels, any one of which is sufficient to deny them any relief. First, Plaintiffs had no communications with Defendant, either verbally or written, regarding the Loan or the Subject Property. Therefore, Defendant could not have made any representations to Plaintiffs. Second, to any extent Plaintiffs allege that Defendant made misrepresentations to either Property Science or Sequoia Mortgage, there is a break in the proximal cause chain to preclude any relief. This is because Property Science engaged in due diligence in testing the veracity of any representations made by Defendant. Property Science used real estate sales and market rent comparables in determining the market value of the Subject Property and would not have solely relied upon the representations made by Defendant. Plaintiffs relied upon the representations made by Property Science in the Appraisal Report, not from Defendant, and any representations made by Defendant to Property Science would be moot because Property Science would have and did test any representations with market data. Third, the only material statement allegedly supplied by Defendant to Property Science, the Rent Roll, did in fact reflect market rental rates during that time as confirmed by Property Science. Therefore, Plaintiffs' claim that Defendant was the source of the Rent Roll, even if true, has no bearing to Plaintiffs' misrepresentation claims because, in fact, no misrepresentation occurred.

////

## VI. CONCLUSION

For the foregoing reasons, Defendant requests the Court to grant his motion for summary judgment.

Dated this 3rd day of June, 2010.

        /s/ - Paul Ham
PAUL HAM, Bar No. 227395
HAM LAW FIRM
1300 Clay Street, Suite 600
Oakland, CA 94612
Telephone: (415) 713-5690
Facsimile: (866) 374-9773
E-Mail: paul.ham@hamfirm.com

Attorney for Defendant David Salma